# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement is made by FEDERAL SUPPLY SERVICES INTERNATIONAL LLC, a Delaware limited liability company, joined by its sole member, GLEN BALDRIDGE (jointly the "Seller"), and SOUTH TEXAS LIGHTHOUSE FOR THE BLIND, INC., a Texas non-profit corporation (the "Buyer"), upon the following terms and conditions:

1. <u>Description of Assets</u>. Seller agrees to sell, assign, transfer and deliver to Buyer and Buyer agrees to purchase from Seller the following described assets of Seller's packing supply business:

   (a) Seller shall grant Buyer an exclusive license and all rights to sell, manufacture, and distribute the following products to any governmental body (federal, state, local, and foreign):

   | Product | National Stock Number |
   |---|---|
   | G-PAK Small | 8115-01-582-9709 |
   | G-PAK Medium | 8115-01-582-9708 |
   | G-PAK Large | 8115-01-582-9710 |
   | G-PAK US Std. | 8115-01-582-9711 |
   | G-SLEEVE Large | 8115-01-598-2716 |
   | G-SLEEVE Small | 8115-01-598-2717 |

   (b) Seller shall grant Buyer a nonexclusive license and right to sell, manufacture, and distribute the above products to the private sector.

   (c) Seller shall provide Buyer with a copy of the templates, schematics and drawings used in the design and manufacture of the G-PAKS and G-SLEEVES identified in Section 1(a) above to be used in the manufacture of such products by Buyer.

   (d) Seller shall assign to Buyer all of Seller's rights, title, and interest in and to U.S. General Services Administration ("GSA") Contract No. GS-02F-0238X which expires August 21, 2016 for the sale of G-PAKS and G-SLEEVES to the United States federal government.

   (e) Seller's goodwill and business with the United States federal government or any other governmental body.

   (f) The exclusive right, title and interest in all of the Seller's customer lists, records, information, and any other documents relating in any manner whatsoever to the past, current or prospective operations of its business with governmental clients.

EXHIBIT A

(g) The non-exclusive right to use the name "Federal Supply Services International" or any similar variation thereof solely in connection with the sales, marketing and advertisement of the G-Pak and/or G-Sleeve; provided, however, that nothing contained herein shall grant Buyer any authority to contractually bind Seller to any agreement or use such name or names for any other purpose. Seller retains the right to maintain its company existence and operate under the name "Federal Supply Services International LLC.

(h) All rights, titles and interests in any service contracts, maintenance contracts, software licensing agreements and similar operating agreements associated with the property described above.

(i) All permits, licenses, franchises, consents, authorities, special authorities, and other similar acts of any governmental body (federal, state, local or foreign) held by Seller in connection with the business that may be lawfully assigned or transferred, subject to any action by such governmental body as may be required in connection with such assignment or transfer. Provided that, all accounts receivable, deposits and cash associated with the business shall be retained by Seller. The assets shall be conveyed by the execution and delivery of an assignment and license agreement in the form shown on Exhibit A attached hereto.

2. <u>Closing Date</u>. The closing of the sale and purchase under this Agreement shall be on or before July 31, 2013 5:00 p.m. C.S.T. (the "Closing Date"). This Agreement is contingent upon Buyer obtaining approval from GSA of the assignment of Contract No. GS-02F-0238X. If such contingency is not satisfied before the Closing Date, then Buyer shall have the option, in its sole discretion, to terminate this Agreement or proceed with the purchase of the assets.

3. <u>Consideration</u>. Buyer agrees to pay to Seller as consideration for the purchase of the assets described herein the sum of TWO HUNDRED FORTY THOUSAND AND NO/100 DOLLARS ($240,000.00) plus THREE PERCENT (3%) of the total gross sales on paid invoices for the sale G-PAKS and G-SLEEVES until Seller has received $1,400,000.00 (including the $240,000.00 initial payment) or five (5) years has elapsed since the Closing Date, whichever occurs first. Buyer agrees to pay the $240,000.00 initial payment to Seller by wire transfer on the Closing Date. On or before the 15th day of the month following the end of each quarter, Buyer shall provide an accounting of its gross receipts for the sale of G-PAKS and G-SLEEVES in the previous quarter in a statement signed by an officer of Buyer showing reasonable detail of Buyer's gross receipts for the sale of G-PAKS and G-SLEEVES, and such other information as may be reasonably necessary to determine and verify gross sales. On or before the 30th day of the month following the end of each quarter Buyer agrees to pay Seller, by wire transfer, the percentage payments for its gross receipts for the sale of G-PAKS and G-SLEEVES in the previous quarter. Seller shall provide Buyer the wiring information for its account prior to the Closing Date.

4. <u>Waiver of Bulk Sales Laws</u>. Buyer and Seller hereby waive compliance with the bulk-transfer provisions of the Uniform Commercial Code (or any similar law), if applicable, in connection with this transaction, however Seller shall indemnify Buyer for any loss cost or expense of Buyer related to debt or obligations arising from the operation of the business prior to the Closing Date.

2

5. <u>Asset Transaction</u>. The transactions contemplated by this Agreement shall constitute only the purchase and sale of the assets connected with the business described above, and Buyer shall not acquire any of the cash or any other assets of Seller except as described herein.

6. <u>Assumption of Liabilities</u>. Buyer shall not assume or become liable for any accounts payable or other debts, obligations or liabilities of Seller, whether direct or indirect, now existing or hereafter occurred, accrued, contingent or otherwise, including but not limited to, all accounts payable, obligations owing to suppliers or other vendors, penalties incurred and any other liabilities, except the specific obligations of Seller which Buyer expressly agrees to assume pursuant to the written terms of this Agreement.

7. <u>Sales Consultant</u>. In addition to the consideration provided herein, Buyer agrees to retain Seller as a sales consultant for a period of five (5) years after the Closing Date pursuant to the terms and conditions of the Consulting Agreement attached hereto as Exhibit B.

8. <u>Taxes</u>. All federal, state, local and foreign, income, ad valorem, excise, sales, use, payroll, unemployment, and other taxes and assessments (the "taxes") that are due and payable by Seller shall be properly computed, duly recorded, duly paid and discharged by Seller through the Closing Date. No unpaid taxes that are or could become a lien against the property or assets conveyed herein, except for current ad valorem taxes not yet due and payable, shall remain unpaid by Seller or subject to any liability by Buyer. Seller represents that it has no knowledge of any liability for penalties, assessments, or interest under the Internal Revenue Code which has not been paid. Seller further represents that no unexpired waiver executed by or on behalf of Seller with respect to any taxes is in effect.

9. <u>Restriction on Government Sales</u>. Except as authorized by Buyer, Seller shall not sell or solicit the sale of G-PAKS or G-SLEEVES to any governmental body (federal, state, local, or foreign). This restriction shall continue in full force and effect in accordance with the terms hereof, unless released or modified in writing by both parties. Seller acknowledges that any breach of this restriction would cause irreparable damage to Buyer, (incapable of compensation by the award of money damages.) Seller therefore consents to the entering of injunctive relief, specific performance, or other equitable relief with respect to any such breach, without the necessity of proving actual damages; provided however, that this shall in no way limit any other remedies which Buyer may have (including without limitation, the right to seek monetary damages). In the event of a breach or threatened breach by Seller of this restriction, Buyer shall be entitled to (i) an injunction in the manner authorized by law restraining Seller from violating the provisions of this section; (ii) any damages sustained Seller; (iii) such other relief at law or in equity as may be available to Seller; and (iv) costs and expenses incurred by Seller, including reasonable attorneys' fees incurred in connection with such action.

10. <u>Access to Information</u>. Seller covenants and agrees that, prior to the Closing Date, it shall give Buyer all of the records of Seller in connection with the business. Seller agrees to cooperate fully with Buyer in connection with Buyer's review and examination of such records and to make full disclosure to Buyer of all facts affecting the same. Except as

contemplated by this Agreement, until the Closing Date Buyer agrees to hold all such information in strict confidence and not use for his own benefit any of the information provided hereunder unless otherwise required by law.

11. <u>Seller's Warranties and Representations</u>. Seller warrants and represents the following matters, each of which shall be conditions precedent to the sale:

(a) All of the assets conveyed herein are owned solely by Seller and shall be free and clear of any and all liens, security interests, liabilities, or other debts, and Seller shall furnish to Buyer any and all consents, partial releases, authorizations or other documents as may be reasonably required by Buyer to comply with the purposes of this Agreement.

(b) Seller has disclosed to Buyer all material facts known to Seller or which should have reasonably been known affecting the business, affairs, assets and properties, liabilities and operations of Seller's subject business.

(c) Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and has full power and authority to carry on its operations as presently being conducted and to sell the assets owned by it.

(d) No contingent or other liabilities, including but not limited to, lawsuits, claims or disputes of employees, customers, vendors, or other persons or entities, exist which would adversely affect Buyer or increase its financial expense in purchasing or operating the business utilizing the assets and other rights acquired under this Agreement.

(e) Seller has not assigned, licensed, or sold any rights in and to the assets conveyed herein to any third party.

(f) To the best of Seller's knowledge, the design of the G-PAKS or G-SLEEVES does not infringe on any existing patents either for part of the G-PAKS or G-SLEEVES or the entire G-PAKS or G-SLEEVES.

(g) Seller will not sell or solicit the sale of the G-PAKS or G-SLEEVES to any governmental body after the Closing Date without the express written consent of Buyer.

(h) Seller has full power and authority to execute, deliver and perform this Agreement and all other documents, instruments and agreements contemplated hereby to be executed, delivered and performed by it and to consummate all of the transactions contemplated hereby. Seller has taken all requisite, company and other actions necessary to authorize the execution, delivery and performance of this Agreement and all other documents, instruments and agreements contemplated hereunder to be executed, delivered and performed by it.

(i) This Agreement constitutes, and all of the documents, instruments and agreements contemplated hereunder will constitute, legal, valid and binding obligations of Seller enforceable in accordance with their respective terms.

4

Upon the failure of Seller to comply with any of the terms of this Agreement, Buyer may at its option enforce the remedy of specific performance or pursue any other remedies against Seller, whether at law or in equity.

12. <u>Buyer's Representations and Warranties</u>. Buyer represents and warrants the following, each of which shall be conditions precedent to the sale:

(a) Buyer is a Texas non-profit corporation and has full power and authority to carry on Seller's business operations as presently being conducted in the State of formation and to acquire the assets described herein.

(b) This Agreement constitutes, and all of the documents, instruments and agreements contemplated hereunder will constitute, legal, valid and binding obligations of Buyer enforceable in accordance with their respective terms.

Upon the failure of Buyer to comply with any of the terms of this Agreement, Seller may at its option enforce the remedy of specific performance or pursue any other remedies against Buyer, whether at law or in equity.

13. <u>Indemnification</u>. Seller agrees to indemnify and hold Buyer harmless from and against any loss, liability, claim, demand or expense, including attorneys' fees and costs, arising out of or resulting from any and all liabilities, obligations, claims or demands of any nature whatsoever arising out of or in any way accrued during Seller's operation of the business prior to the Closing Date. In addition, Seller will defend, indemnify and hold Buyer harmless against any and all claims, liabilities and losses arising out of any claim of infringement of a patent by the assets conveyed by Seller under this Agreement. Buyer agrees to give Seller prompt written notice of any litigation threatened or instituted against Buyer that might constitute the basis of a claim for indemnity under this Agreement.

14. <u>Time is of Essence</u>. Time is of the essence of this Agreement, and all time limitations shall be strictly construed and rigidly enforced. The failure or delay in the enforcement of any rights or interests granted herein shall not constitute a waiver of any such right or interest.

15. <u>Notices</u>. Except as otherwise provided herein, any notice, correspondence or payment made pursuant to this Agreement must be made by (a) depositing the same in the United States mail, postage prepaid, addressed as follows, or (b) delivering the same to the other party. Any notice given in accordance with (a) hereof shall be effective upon deposit in the United States mail, and the addresses of the parties hereto shall, until changed by written notice to such effect, be as follows:

    SELLER:    Federal Supply Services International, LLC
                    Attn: Glen Baldridge, CEO
                    1001 Harrisonville Ave.
                    New Boston, Ohio 45662

BUYER: South Texas Lighthouse for the Blind, Inc.
Attn: Nicky Ooi, President and CEO
4421 Agnes Street
Corpus Christi, Texas 78405

16. <u>Agents or Brokers</u>. Seller and Buyer mutually represent and agree with each other that no agents or brokers have been utilized in the solicitation or negotiation of the sale of the assets described herein, and no fees, commissions or expenses of any type shall be due or payable out of the proceeds of the purchase price by either party to this Agreement.

17. <u>Attorney's Fees</u>. Buyer and Seller each shall pay their own attorney's fees incurred in connection with the negotiation and preparation of this Agreement and the closing of the sale hereunder. In the event of any dispute covering any matter arising under this Agreement, any party to this Agreement who is the prevailing party in a legal proceeding against the other party to this Agreement shall be entitled to recover reasonable attorney's fees from the non-prevailing party.

18. <u>Survival</u>. The representations, warranties, covenants and agreements of the parties contained in this Agreement or contained in any writing delivered pursuant to this Agreement shall survive the Closing Date and be enforceable in accordance with the laws of the State of Texas.

19. <u>Assignment</u>. This Agreement shall be binding on and inure to the benefit of the parties to this Agreement and their respective representatives and permitted assigns. This Agreement may not be assigned by any party without the written consent of the other party.

20. <u>Further Assurances</u>. Each party hereto agrees to perform any further acts and to execute and deliver any further documents which may be reasonably necessary to carry out the provisions of this Agreement.

Duly executed this ___31___ day of ___July___, 2013.

SELLER:
FEDERAL SUPPLY SERVICES
INTERNATIONAL LLC
By: _____
Glen Baldridge, CEO

_____
Glen Baldridge, Individually

BUYER:
SOUTH TEXAS LIGHTHOUSE FOR THE
BLIND, INC.
By: _____
Nicky Ooi, President and CEO

EXHIBIT A

## ASSIGNMENT AND LICENSE AGREEMENT

FEDERAL SUPPLY SERVICES INTERNATIONAL LLC, a Delaware limited liability company, joined herein by Glen Baldridge, individually and as the sole member and CEO of FEDERAL SUPPLY SERVICES INTERNATIONAL LLC, (both hereinafter collectively referred to as the "Assignor"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration to it in hand paid by SOUTH TEXAS LIGHTHOUSE FOR THE BLIND, INC., a Texas non-profit corporation, of Corpus Christi, Nueces County, Texas, as the "Assignee", the receipt and sufficiency of which is hereby acknowledged, and the further consideration of that certain Agreement, entitled Asset Purchase Agreement, made by and between Assignor as "Seller" and Assignee as "Buyer" dated , 2013, has BARGAINED, SOLD, TRANSFERRED, CONVEYED, ASSIGNED AND DELIVERED, and by these presents does BARGAIN, SELL, TRANSFER, CONVEY, ASSIGN, AND DELIVER unto the said SOUTH TEXAS LIGHTHOUSE FOR THE BLIND, INC., Assignee, all of the following described assets ("Assigned Assets"):

(a) An exclusive license and all rights to sell, manufacture, and distribute the following products developed by Seller to any governmental body (federal, state, local, and foreign):

| Product | National Stock Number |
| --- | --- |
| G-PAK Small | 8115-01-582-9709 |
| G-PAK Medium | 8115-01-582-9708 |
| G-PAK Large | 8115-01-582-9710 |
| G-PAK US Std. | 8115-01-582-9711 |
| G-SLEEVE Large | 8115-01-598-2716 |
| G-SLEEVE Small | 8115-01-598-2717 |

(b) A nonexclusive license and right to sell, manufacture, and distribute the above products to the private sector.

(c) A copy of the templates, schematics and drawings used in the design and manufacture of the G-PAKS and G-SLEEVES identified in Section (a) above to be used in the manufacture of such products by Buyer.

(d) All of Seller's rights, title, and interest in and to U.S. General Services Administration ("GSA") Contract No. GS-02F-0238X which expires August 21, 2016 for the sale of G-PAKS and G-SLEEVES to the United States federal government.

(e) Seller's goodwill and business with the United States federal government or any other governmental body.

(f)  The exclusive right, title and interest in all of the Seller's customer lists, records, information, and any other documents relating in any manner whatsoever to the past, current or prospective operations of its business with governmental clients.

(g)  The non-exclusive right to use the name "Federal Supply Services International" or any similar variation thereof solely in connection with the sales, marketing and advertisement of the G-Pak and/or G-Sleeve; provided, however, that nothing contained herein shall grant Buyer any authority to contractually bind Seller to any agreement or use such name or names for any other purpose. Seller retains the right to maintain its company existence and operate under the name "Federal Supply Services International LLC.

(h)  All rights, titles and interests in any service contracts, maintenance contracts, software licensing agreements and similar operating agreements associated with the property described above.

(i)  All permits, licenses, franchises, consents, authorities, special authorities, and other similar acts of any governmental body (federal, state, local or foreign) held by Seller in connection with the business that may be lawfully assigned or transferred, subject to any action by such governmental body as may be required in connection with such assignment or transfer.

To have and to hold all of the above-described property, together with all of the rights appurtenant thereto in anywise belonging unto Assignee and Assignee's successors and assigns forever.

ASSIGNOR:
FEDERAL SUPPLY SERVICES
INTERNATIONAL LLC

By: _____
Glen Baldridge, CEO

_____
Glen Baldridge, Individually

STATE OF _____ §
                        §
COUNTY OF _____ §

This instrument was acknowledged before me on the _____ day of _____, 2013, by Glen Baldridge, Individually and as the CEO and sole member of Federal Supply Services International LLC, a Delaware limited liability company, on behalf of said company.

_____
Notary Public, State of _____

## EXHIBIT B

## CONSULTING AGREEMENT

This Consulting Agreement (the "Agreement") made and entered into as of the 31st day of July, 2013 (the "Effective Date"), by and between SOUTH TEXAS LIGHTHOUSE FOR THE BLIND, INC., a Texas non-profit corporation ("STLB"), and FEDERAL SUPPLY SERVICES INTERNATIONAL LLC, a Delaware limited liability company ("Consultant").

WHEREAS, STLB, as Buyer, and Consultant, as Seller, have entered into that certain Asset Purchase Agreement dated as of July 31st, 2013 (the "Asset Purchase Agreement"), whereby STLB is purchasing from Consultant certain assets necessary for STLB to sell Consultant's G-PAK and G-SLEEVE products to governmental agencies; and

WHEREAS, STLB has determined that it is in the best interests of STLB to retain the benefit of the Consultant's services, experience and loyalty, and the Consultant desires to provide its services and experience and devote its loyalty to STLB upon the terms and conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the mutual covenants, promises and undertakings set forth in this Agreement, the parties hereby agree as follows:

1. Consulting Duties; Term. Beginning on the Effective Date and, unless earlier terminated pursuant to Section 3, continuing until the 5th anniversary of the date hereof ("Effective Date") (such five years being the "Consulting Term"), Consultant shall serve as a sales consultant to STLB. During the Consulting Term, Consultant shall perform such duties and services delegated by STLB relating to the sale of G-PAKS and G-SLEEVES to governmental agencies (federal, state, local, or foreign) and shall perform such duties as may be reasonably assigned to Consultant from time to time by any officer of STLB, which services shall include, but are not necessarily limited to: assisting STLB in setting up operations of the G-PAK and G-SLEEVE business, maintaining customer and governmental relations of STLB and the G-PAK and G-SLEEVE business related to or beneficial to the G-PAK and G-SLEEVE business of STLB; transferring knowledge to STLB's employees (such employees as are designated by STLB) related to the G-PAK and G-SLEEVE business including, but not limited to the technical skills involved, nuances of the G-PAK and G-SLEEVE business, vendor sources, key customers and customer opportunities, employees, software, hardware; and the initiation of, or active participation in, face-to face transition meetings with valuable customers of the G-PAK and G-SLEEVE business (as identified by STLB in consultation with Consultant, in the STLB's discretion, and STLB's employees (designated by STLB).

2. Compensation. During the Consulting Term, STLB shall pay and provide the following compensation to Consultant as full compensation for all services rendered by Consultant to STLB under this Agreement:

(a) On a monthly basis, a sales commission equal to Two Percent (2%) of the total gross sales on paid invoices for the sale of G-PAKS and G-SLEEVES by Consultant on behalf of STLB. On or before the 15th day of the month following the end of each proceeding month, Consultant shall provide proof of sales for the preceding month to STLB. On or before the 30th day of the month following the end of the preceding month, STLB shall pay Seller, by wire transfer, the commission for gross sales on paid invoices for the sale of G-PAKS and G-SLEEVES generated by Consultant on behalf of STLB for the preceding month.

(b) Consultant shall be responsible for and shall pay and satisfy all expenses incurred by Consultant in the performance of its duties hereunder, including any and all selling and promotional expenses.

(c) STLB shall have, and is hereby granted, a right to set off against any payments of STLB to Consultant hereunder in the event that Consultant is financially obligated to STLB. In the event that a dispute exists between STLB and Consultant with respect to any such setoff, STLB may withhold the disputed amounts until such time as the dispute is resolved.

3. Termination of Relationship.

(a) STLB may immediately terminate Consultant's relationship with STLB, STLB shall thereafter not be obligated to make any further payments hereunder for "Cause" (as defined in Section 3(b) below) by giving written notice to Consultant. In the event of a termination for Cause, Consultant shall be entitled retain that portion of the Compensation paid to Consultant through and including the termination date, subject to any offset or recoupment rights of STLB and any other rights or remedies related to any breach of this Agreement by Consultant prior to the termination date. Except as provided herein or required by applicable law, Consultant shall not be entitled to any other compensation or benefits.

(b) Termination for "Cause" shall mean termination of Consultant's relationship with STLB by STLB because of (i) any act or omission that constitutes a breach by Consultant of his obligations under this Agreement; (ii) Consultant's neglect of, or willful misconduct in connection with, the performance of or the refusal of Consultant to perform its duties under this Agreement; (iii) a criminal conviction of Consultant or a plea of nolo contendere for a crime which constitutes a felony under applicable law; or (iv) Consultant's perpetration of an act of theft, fraud or embezzlement or other act of dishonesty whether or not such act is or is not: against STLB; or related to the conduct of STLB's business.

4. Confidential Information. Consultant acknowledges that it has knowledge of, or during the Consulting Term it will have access to, trade secrets and other information about STLB which is confidential or proprietary to STLB, including, but not limited to: (a) information about STLB, STLB's business, its employees and its products; (b) techniques, technical know-how, methods, and formulations; (c) hardware, software and computer programs and technology and methods used by STLB; (d) the customer database and other information about STLB's customers, such as contacts, criteria, requirements, specifications, policies, or other similar information; (e) relationships with other service providers, partners and contractors; (f) vendor and supplier information; (g) marketing plans and concepts; (h) price information; (i) sales,

costs, profits, profit margins, salaries and other financial information pertaining to STLB or STLB's business; and G) information pertaining to STLB's customers or clients, including but not limited to personal information such as names, addresses, e-mail addresses, financial information, etc. (collectively, the "Confidential Information"). During the Restricted Period, except as otherwise set forth in this Section Consultant agrees not to disclose to any third party any Confidential Information known by it or made known to it by STLB, or learned by it during its relationship with STLB, and including without limitation all Confidential Information acquired by STLB from Consultant; nor shall Consultant use any such information for its benefit or for the benefit of any third party; provided that this Section is not applicable to Confidential Information that (x) becomes generally available to the public other than as a result of disclosure by Consultant in breach of this Agreement; (y) becomes available to Consultant on a non-confidential basis from a source other than STLB; or (z) is used or disclosed by Consultant in connection with the preparation and filing of tax returns or any other filings required by a governmental entity or is used or disclosed by Consultant as otherwise required by law or pursuant to an order of a court of competent jurisdiction.

5. Remedies.

(a) The parties agree that any breach of Section 4 of this Agreement by Consultant will cause immediate and irreparable injury to STLB, and STLB shall be entitled to seek injunctive relief to specifically enforce the provisions of Section 4 or restrain any actual or threatened violation of such sections, in addition to which STLB shall be entitled to actual damages incurred as a result of the violation of said provisions. In the event of a breach of any portion of this agreement by Consultant, STLB shall be entitled to recover, in addition to any other remedy under this Agreement, reasonable costs and reasonable attorneys' fees incurred in the enforcement of or defense of any of said provisions.

(b) The remedies herein provided shall be cumulative and no one (1) shall be construed as exclusive of any other remedy provided by law or equity and failure of any party to exercise any remedy at any time shall not operate as a waiver of the right of such party to exercise any remedy for the same or subsequent default at any time thereafter.

6. Severability. If any provision of this Agreement is or becomes invalid, illegal or unenforceable in any respect under any law, the validity, legality and enforceability of the remaining provisions hereof shall not in any way be affected or impaired.

7. Amendment and Waiver. Neither this Agreement nor any term, covenant, condition or other provision hereof may be changed, waived, discharged or terminated except by an instrument in writing signed by both parties. No delay or omission by either party hereto in exercising any right, power or privilege hereunder shall impair such right, power or privilege nor shall any single or partial exercise of any such right, power or privilege preclude any further exercise thereof or the exercise of any other right, power or privilege.

8. Counterparts. This Agreement may be executed in one or more identical counterparts, each of which when executed by both of the parties and delivered shall be an

original, but all of which taken together shall constitute a single instrument, and any facsimile transmission of a signature hereto shall be deemed an original.

9. <u>Assignment</u>. Neither party shall assign this Agreement without the prior written consent of the other party. The rights and obligations of the parties hereto shall inure to the benefit of, and shall be binding upon, the successors and permitted assigns of each of them.

10. Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and thereof.

11. <u>Jurisdiction and Venue; Governing Law</u>. This Agreement and all transactions contemplated hereby shall be governed, construed and enforced in accordance with the laws of the State of Texas, and shall be treated in all respects as a State of Texas contract, without regard to any state's laws related to choice or conflict of laws. The parties to this Agreement irrevocably consent to the jurisdiction and venue of the courts of the United States District Court for the Southern District of Texas located in Nueces County, Texas with respect to any and all actions related to this Agreement or the enforcement of this Agreement and the parties to this Agreement hereby irrevocably waive any and all objections thereto. All legal proceedings to enforce, challenge or construe the terms or making of this Agreement or to recover for its breach shall be litigated exclusively in a state or federal court located in Nueces County, Texas, except that STLB may elect, at its sole discretion, to litigate the action in the county where any breach by Consultant occurred or where Consultant can be found.

12. <u>Notices</u>. All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given (a) on the date of service if served personally on the party to whom notice is to be given, (b) on the day of transmission if sent via facsimile transmission to the facsimile number given below, (c) on the day after delivery to a nationally recognized overnight courier service or the Express Mail service maintained by the United States Postal Service, or (d) on the fifth (5th) day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and addressed as follows:

<u>If to Consultant to:</u>

Federal Supply Services International, LLC
Attn: Glen Baldridge, CEO
1001 Harrisonville Ave.
New Boston, Ohio 45662

<u>If to STLB to:</u>

South Texas Lighthouse for the Blind, Inc.
Attn: Nicky Ooi, President and CEO
4421 Agnes Street
Corpus Christi, Texas 78405

Any party may change its address for purposes of this Section by giving the other party written notice of the new address in the manner set forth above.

| CONSULTANT: | STLB: |
|---|---|
| FEDERAL SUPPLY SERVICES INTERNATIONAL LLC | SOUTH TEXAS LIGHTHOUSE FOR THE BLIND, INC. |
| By: *[signature]* | By: *[signature]* |
| Glen Baldridge, CEO | Nicky Ooi, President and CEO |

## VERIFICATION

STATE OF TEXAS § 
§ Civil Action No. 2:19-CV-00193
COUNTY OF NUECES §

BEFORE ME, the undersigned Notary Public, on this day personally appeared David Wells, who having been duly sworn, on oath deposes and says:

"My name is David Wells. I am Vice President of Sales and Marketing of the Plaintiff in the lawsuit referenced above. The facts stated within this Affidavit are within my personal knowledge. I am both competent and authorized to make this Affidavit. I hereby verify that the attached Asset Purchase Agreement is a true and correct duplicate of the original."

_____
DAVID WELLS

SUBSCRIBED AND SWORN TO before me on the 11th day of October, 2019, to certify which witness my hand and official seal.

SUNITA BHATTARAI
Notary Public, State of Texas
Comm. Expires 07-28-2023
Notary ID 130310796

_____
Notary Public, State of Texas

3886-10\19 Verification 1009-12